(August 17, 2006)

■ In the Matter of COUNTY OF WESTCHESTER et al., Respondents, v BOARD OF TRUSTEES OF STATE UNIVERSITY OF NEW YORK, Appellant. [820 NYS2d 358]—

Mercure, J. Appeal from a judgment of the Supreme Court (Connor, J.), entered February 22, 2005 in Albany County, which partially granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul certain amendments to regulations promulgated by respondent.

Respondent possesses broad regulatory authority with regard

to community colleges and is enjoined by statute to promulgate regulations addressing the administration and operation of community colleges, including formats for the preparation of budgets by the colleges and their local sponsors and schedules for the local sponsors' disbursements to the colleges (*see* Education Law § 355 [1] [c]; § 6304 [1] [b] [iv]). In 2003, respondent adopted several amendments to 8 NYCRR part 600 *et seq.* designed to increase the fiscal independence of community colleges from their local sponsors, which usually provide one half of the colleges' capital costs and up to one third of the colleges' annual operating costs (*see* Education Law § 6304 [1] [c]). The remainder of the colleges' costs are funded by the state and payments from students (*see* Education Law § 6304). As relevant here, the 2003 amendments clarified 8 NYCRR 600.2 (a) and 602.3 (b) by providing that local sponsors' budget approval authority is limited to the "budget total" and does not extend to the individual line items in the budget; 8 NYCRR 602.9 (a) was also amended to provide that the college boards of trustees[1] have the authority to transfer appropriations, within the total approved budget, from one account to another without further sponsor approval.

Petitioner County of Westchester—which is the local sponsor of Westchester Community College—and petitioner New York State Association of Counties (hereinafter NYSAC) commenced this proceeding pursuant to CPLR article 78 seeking to annul a number of the 2003 amendments as inconsistent with the Education Law. Supreme Court partially granted petitioners' application, concluding that 8 NYCRR 600.2 (a), 602.3 (b) and 602.9 (a) were inconsistent with Education Law § 6304 (6). Respondent now appeals from that portion of the decision which granted petitioners' application, asserting that the regulations at issue are, in fact, consistent with the Education Law. We agree.[2]

It is well settled that "an agency's interpretation of the statutes it administers must be upheld absent demonstrated ir-

---

**1.** Community colleges are administered by boards of trustees comprised of five members appointed by the local sponsor—one of whom may be a member of the sponsor—four by the governor and one elected student member (Education Law § 6306 [1]). The boards of trustees are charged with preparing the colleges' budgets, which are submitted for approval to the local governing bodies (*see* Education Law § 6306 [2]).

**2.** Respondent also contends that NYSAC lacks both standing and capacity to sue. It is not necessary for us to reach this argument inasmuch as respondent did not contest the capacity or standing of the remaining petitioner before Supreme Court, and does not seek to do so on this appeal.

rationality or unreasonableness" (*Seittelman v Sabol*, 91 NY2d 618, 625 [1998]; *see Kuppersmith v Dowling*, 93 NY2d 90, 96 [1999]; *New York State Assn. of Counties v Axelrod*, 78 NY2d 158, 166 [1991]). An agency " 'may not, in the exercise of rule-making authority, engage in broad-based public policy determinations' " and its regulations must be in harmony with the statutes' purpose (*Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, 2 NY3d 249, 254 [2004], quoting *Rent Stabilization Assn. of N.Y. City v Higgins*, 83 NY2d 156, 169 [1993], *cert denied* 512 US 1213 [1994]). Nevertheless, the Legislature may direct administrative agencies to enact regulations that further the statutory scheme and, "[i]n so doing, an agency can adopt regulations that go beyond the text of that legislation, provided they are not inconsistent with the statutory language or its underlying purposes" (*Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., supra* at 254).

The regulatory amendments at issue here were enacted as part of a comprehensive set of revisions designed to ensure that respondent's regulations accurately reflect a 1988 amendment of Education Law § 6304 (6) (*see* L 1988, ch 614). That legislation was introduced at respondent's request and arose out of a task force report recommending that community colleges be given fiscal independence from local sponsors, within the parameters of an approved budget (*see* 1986 Report of the Chancellor's Task Force on Community Colleges, at 1-2). The amendments were intended to "provide the flexibility to the board of trustees of a community college to handle, and be directly responsible for, all aspects of fiscal administration of any approved budget" (Letter from Assembly Sponsor, Aug. 30, 1988, Bill Jacket, L 1988, ch 614). Accordingly, the statute directs the local sponsor to provide its share of the colleges' costs "in conformance with such sponsor's annual budgetary appropriation, and" to pay "all appropriations for maintenance of the college . . . to the board of trustees of the college for expenditure by the board, subject to the terms and conditions of such appropriations appearing in such budget" and regulations promulgated by the sponsor (Education Law § 6304 [6]; *see* Sponsor's Mem, Bill Jacket, L 1988, ch 614). While a sponsor may ensure accountability through internal reports on past expenditures and external audits, no preaudit is required before

the college may spend its funds (*see* Sponsor's Mem, Bill Jacket, L 1988, ch 614).[3]

Consistent with the statutory intent of providing flexibility to community colleges in the administration of their fiscal operations (*see id.*), 8 NYCRR 600.2 (a) and 602.3 (b) provide that local sponsors' authority in approving the budget is limited to "budget total." The parties are in agreement that while the local sponsor remains fully in control of the total amount and retains the right to decrease the sponsor contribution, the use of the phrase "budget total" precludes the sponsor from altering specific line items included in the proposed budget. In addition, 8 NYCRR 602.9 (a) states that "[w]ithin the total approved college operating budget, the college trustees may transfer appropriations from one function or object of expense account to another." Respondent contends that these amendments increase the fiscal autonomy of community colleges by allowing the colleges ongoing flexibility regarding how funds are expended during the fiscal year.

We agree with respondent that the language in the statute providing that a college's expenditure of the appropriations be "subject to the terms and conditions of such appropriations appearing in such budget" (Education Law § 6304 [6])—while not a model of clarity—does not mandate annulment of the regulations. Petitioners assert that this phrase *requires* that local sponsors be permitted to exercise line item approval authority over a college's proposed budget. As respondent asserts, however, the phrase "terms and conditions" does not require the conclusion that local sponsors possess line item approval authority. Instead, the phrase does not address the substance of the sponsor's approval authority at all. In our view, this is an instance in which the Legislature " 'after fixing a primary standard, [has] endow[ed] [an] administrative agenc[y] with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation' " (*Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, *supra* at 254, quoting *Matter of Nicholas v Kahn*, 47 NY2d 24, 31 [1979]).

Further, the language in the statute directing the sponsor to provide its share of a college's costs "in conformance with such sponsor's annual budgetary appropriation" (Education Law § 6304 [6]) references the share of the sponsor's costs as agreed to by the sponsor and respondent. Finally, the phrase "subject

---

**3.** It should also be noted that, in fact, the local sponsor's share of a college's operating costs is generally limited to 26.7% of the total (*see* Education Law § 6304 [1] [a], [c]).

. . . to such regulations regarding the custody, deposit, audit and payment thereof as such local [sponsor] . . . may deem proper to carry out the terms of the budget" (Education Law § 6304 [6]) does not address the substance of either the sponsor's approval authority or its regulatory authority over a college's transfer of funds from one expense account to another. Rather, the phrase comes into play only after the funds are transferred to a college pursuant to the approved budget and relates to the sponsor's continued oversight via, among other things, its ability to require audits of past expenditures (*see* Education Law § 6304 [6]). We note that if we were to construe this phrase as broadly as petitioners request, nothing would prohibit local sponsors from requiring detailed audits *prior* to the colleges spending the appropriated funds—contrary to the very purpose of the statutory amendment (*see* Sponsor's Mem, Bill Jacket, L 1988, ch 614).

Indeed, the expenditure of funds by community colleges remains subject to substantial oversight despite the amendments to the statute and regulations. The statute ensures sponsor control by requiring that a budget be presented to the local sponsor annually, with the sponsor "retaining the right to increase or decrease the amount of sponsor contribution pursuant to law" (Sponsor's Mem, Bill Jacket, L 1988, ch 614). The sponsor remains in control of its financial contribution to the college through its up-or-down approval and appropriation authority, and is informed of all accounting details in the college operating budget request, which must specifically enumerate revenues and expenses for an extensive array of functions (*see* 8 NYCRR 602.4). Additional oversight is provided through the sponsor's authority to appoint half the members of the board of trustees (*see* Education Law § 6306 [1]), as well as the sponsor's ability to require the college to provide it with such periodic audits and reports that it deems appropriate (*see* Education Law § 6304 [6]). If the local sponsor believes that the audits and reports demonstrate that the trustees are abusing their authority, this can be addressed in future budget negotiations.

In short, nothing in the statute mandates that a local sponsor be accorded line-item approval authority or that a community college be limited from making adjustments to the allocation of resources, within the total budget, in response to, among other things, unanticipated needs. Accordingly, inasmuch as respondent's regulations are not inconsistent with the language of the statute and respondent has "articulated a rational explanation" of how the regulations further the legislative goal of granting fiscal autonomy to community colleges while maintaining spon-

sor oversight, petitioners' challenges to the regulations must be rejected (*Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, 2 NY3d 249, 255 [2004], *supra*; *see* Letter from Senate Sponsor, Aug. 31, 1988, Bill Jacket, L 1988, ch 614).

Cardona, P.J., Spain, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as partially granted petitioners' application; petition dismissed in its entirety; and, as so modified, affirmed.